<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SASHA DIAZ,<br><br>                Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                Defendant. | Civil Action No. 07-3220 (SRC)<br><br>**OPINION** |

<u>**CHESLER**</u>, District Judge

      This matter comes before the Court on the appeal by Plaintiff Sasha Diaz ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she is not eligible for a period of disability, Social Security Disability Benefits, or Supplemental Security Income Benefits under the Social Security Act ("the Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. C<small>IV</small>. R. 9.1(b), finds that portions of the Commissioner's decision are not supported by substantial evidence. Therefore, the decision is hereby **REVERSED** and **REMANDED** for further proceedings in accordance with this Opinion.

## I.  BACKGROUND

    Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on April 29, 2004 claiming disability beginning on August 30,

2003. (Tr. 58, 125.) The applications were denied initially (Tr. 19-26) and upon reconsideration (Tr. 30-33 (DIB) 135-138 (SSI)). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 34), and a hearing was held before ALJ Dennis O'Leary on June 9, 2006 (Tr. 156). ALJ O'Leary issued a decision on September 15, 2006 finding that Plaintiff was not disabled. (Tr. 28.) Plaintiff requested a review of the decision by the Appeals Council on November 16, 2006 (Tr. 9), simultaneously supplementing the record with a letter brief from her counsel. (Tr. 8, 154-55.) The request for review was denied on May 21, 2007, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-7.)

     Plaintiff was born on August 19, 1977 and completed twelfth grade but has had no special job training. (Tr. 58, 80-81.) Although born male, she is presently undergoing gender reassignment and identifies herself as a woman. In her Disability Report, she states that the conditions that limit her ability to work are "back problems[,]" and as a result, she "can[]'t stand too long." (Tr. 77.) She explained that her injuries caused her to stop working on August 30, 2003. (Tr. 78.) She wrote that her most recent jobs were in sales at various retail and other stores from 1996 to 2003, where she reported that she worked five hours a day, seven days a week using "machines, tools, or equipment[,]" standing and walking for eight hours a day, "handl[ing], grab[bing] and grasp[ing] big objects for one hour, and reach[ing] for two hours. (Tr. 78-79, 82-83, 85-88.) During her hearing before the ALJ, she also stated that, at one point during this period, she worked in "different factories to do all kinds of work[.]" (Tr. 161.) The heaviest item that she reported lifting at any of her jobs was less than ten pounds, but she stated that she frequently lifted that weight. (Tr. 79.) Although disparities exist between Plaintiff's descriptions of her past work and the wage reports, between 1995 and 2003, Plaintiff's wage

reports show that she held approximately 16 jobs. (Tr. 65-68.) At the hearing before the ALJ, Plaintiff stated that her last job was "tak[ing] pictures of adults or children" at a photography studio, a job she held for five to six months. (Tr. 161.) Regarding her medical records, Plaintiff reported that she had not sought or otherwise obtained medical or psychiatric treatment regarding the ailments that were preventing her from working nor was she taking any medications for the problems. (Tr. 79.) Reflecting this, the trial transcript is devoid of treating physicians' reports.

## II. DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g) and must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla, but need not rise to the level of a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.

1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age."  Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."  Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.**     **Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for SSI benefits, a claimant must first establish that he or she is aged, blind, or "disabled[,]" 42 U.S.C. § 1381a, see 42 U.S.C. § 1382c, and DIB benefits require a showing "of disability[,]" 42 U.S.C. § 423.  A claimant is deemed "disabled" under the Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability

is predicated on whether a claimant's impairment is so severe that he or she "is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.     The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[1]  20 C.F.R. §§ 404.1520(a)(4)(i), (b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. 404.1520(c).  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  Id.  If the claimant is

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that, to deny a claim at step three, the ALJ must specify which listings[2] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Id. at 505.  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing."  Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), (e).  If the claimant is able to perform his past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iv).  In Burnett, the Third Circuit set forth the analysis required at step

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Subpart 404, Part P, Appendix 1.

four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his or her past work, and his or her condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy that the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1520(a)(4)(v), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled.  20 C.F.R. § 404.1520(a)(4)(v).  Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), at the fifth step, the Commissioner "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Subpart 404, Part P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity).  The guidelines also reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations

of these factors.  20 C.F.R. Subpart 404, Part P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(a).

Additionally, throughout the disability determination process, the Commissioner must "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of" sufficient severity to qualify the claimant for benefits.  42 U.S.C. § 423(d)(2)(B).  However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him or her for benefits.  See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

Finally, while Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as its interpretation in Jones v. Barnhart, to every step of the decision.  See, e.g., Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format."  Id.

    **D.**    **The ALJ's Decision**

In brief, the issues before the ALJ were whether Plaintiff was disabled as defined by sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act since August 30, 2003

(DIB) and May 2004 (SSI).  (Tr. 13, 18.)  The ALJ examined the record and determined that: 1) at step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period; 2) at step two, Plaintiff had the severe combination of impairments of depression and back disorder; 3) at step three, Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" despite the ALJ's focus on "Listings 12.00 (Mental Disorder) and 1.00 (Musculoskeletal System)"; and 4) at step four, Plaintiff retained the residual functional capacity to perform her past relevant work as a sales clerk or photographer.  (Tr. 15-18.)  Due to the ALJ's determination at step four, no step five analysis was required.  In conclusion, the ALJ determined that Plaintiff was not under a disability as defined in the Social Security Act from the date of her application for SSI through September 28, 2006, the date of the ALJ's decision, so she does not qualify for DIB, a period of disability, or SSI.  (Tr. 18.)  The ALJ also determined that Plaintiff had "the residual functional capacity to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday."  (Tr. 17.)

   In coming to this determination, the ALJ relied on Plaintiff's accounts of her own health, a May 19, 2004 x-ray of Plaintiff's lumbosacral spine (see Tr. 118), and the reports from a consultive medical examination for DDS by Mahendra K. Misra, M.D. (see Tr. 112-17) and a consultive psychological examination for DDS by Jack Baharlias, M.D. (see Tr. 122-24).  (Tr. 15-17.)  The ALJ also noted that Plaintiff's "physical complaints consist of kyphosis in her back which put her on SSI for a few years as a child" and that Plaintiff "had breast implants and in the surgery one of her lungs was inadvertently punctured."  (Tr. 17.)  After reviewing this information, the ALJ rejected Plaintiff's subjective complaints of pain and concluded that

9

Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plainitff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 17.) The ALJ also stated that he gave "considerable weight to the consultive examiners['] opinions . . . [, which] did not opine that [Plaintiff] was unable to work." (Tr. 17.)

### E.     Plaintiff's Appeal

Plaintiff contends that the ALJ's decision should be reversed because: 1) the ALJ insufficiently articulated an evidentiary basis for his residual functional capacity ("RFC") determination (Pl.'s Br. 20-24); 2) the ALJ's decision insufficiently evaluates Plaintiff's subjective complaints of pain (Pl.'s Br. 24-30); and 3) the ALJ's decision fails to properly compare Plaintiff's medical and mental impairments to the requirements of her past relevant work (Pl.'s Br. 30-33). Plaintiff argues that the ALJ's opinion in this case should be reversed because "substantial evidence in the administrative record establishes entitlement and eligibility for and to the benefits applied for[,]" and this Court should order the payment of benefits. (Pl.'s Br. 13.) In the alternative, Plaintiff argues that a remand is required with an order for a new hearing and a new decision, because "the Commissioner's final administrative decision is not based on the substantial evidence of record[.]" (Pl.'s Br. 13.)

Plaintiff first argues that the ALJ insufficiently articulated an evidentiary basis for his residual functional capacity determination. The core of Plaintiff's contention is that the ALJ's RFC analysis consists of nothing more than a conclusory paragraph that states the finding itself and non-specific statements that medical, opinion, and subjective evidence were relied upon in coming to the finding. (Pl.'s Br. 23-24.) In making this argument, Plaintiff classifies the ALJ's reasoning as "nothing but circular logic and incomprehensible gibberish[.]" (Pl.'s Br. 24.) In her

brief, Plaintiff places extensive reliance on the Third Circuit's requirements for determining RFC as described in Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981) and explained more recently in Burnett, 22 F.3d at 121, claiming that the ALJ failed to meet the circuit court's standard. Specifically, in Burnett, the Third Circuit explained,

> In making a residual functional capacity determination, the ALJ must consider all evidence before him.  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."

Burnett, 22 F.3d at 121 (citations omitted).

Plaintiff correctly states that the ALJ insufficiently explained his RFC determination.  In his decision, the ALJ found that Plaintiff "has the residual functional capacity to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday." (Tr. 17.)  This statement was supported by several paragraphs, including a specific discussion of Plaintiff's subjective complaints of pain and a general reference to the consultive medical reports. (Tr. 17.)  The explanation supporting the ALJ's determination and the ALJ's discussion of the consultive physicians' reports demonstrates that the ALJ "consider[ed] all evidence before him" (Tr. 15-17). See Burnett, 22 F.3d at 121.  Further, in contrast to Burnett, where the Third Circuit listed a series of objective medical evidence that was ignored by the ALJ, Plaintiff fails to show that the ALJ ignored contradictory evidence, and in its review of the record, the Court was unable to find any evidence that was overlooked.  See id. at 122-23.  The Court also notes that Plaintiff bears the burden of proof at the point of RFC determination, Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987), and here, the bulk of the ailments complained of by Plaintiff are not supported by

11

objective medical evidence from treating physicians, as no treating physicians' reports are in the record. Despite the non-subjective evidence within the record not addressing Plaintiff's ability to lift, carry, stand, walk, or sit (Tr. 112-17; 122-24), the ALJ does not cite the sources supporting his determination. Although the consultive physicians examined Plaintiff and submitted lengthy evaluations, no RFC assessment accompanied either of their evaluations, nor did their evaluations or any other documents in the record address Plaintiff's ability to lift, carry, stand, walk, or sit. See Mason v. Shalala, 994 F.2d 1058, 1065-66 (3d Cir. 1993) (discussing what constitutes adequate evidence for an ALJ to formulate an RFC determination); Tr. 112-17; 122-24. An ALJ's decision must include "sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505; Rivera, 164 F. App'x at 262. Here, because the ALJ does not explain the source of his findings and that source is not apparent from the medical or other records within the court transcript, the ALJ's RFC determination must be reversed and remanded for further evaluation and explanation.

Plaintiff's second argument that the ALJ's decision insufficiently evaluates Plaintiff's subjective complaints of pain, however, lacks merit. Specifically, Plaintiff asserts that the ALJ did not state what evidence he relied on to determine that Plaintiff's statements were not entirely credible and asserts that the ALJ undervalued Plaintiff's mental impairment, contending that "the ALJ never mentions [Plaintiff's] borderline intelligence, anxiety, [and] gender confusion[.]" (Pl.'s Br. 29-30.) As stated above, in his decision, the ALJ concluded that Plaintiff's descriptions of the "intensity, persistence and limiting effects" of her symptoms were "not entirely credible[.]" (Tr. 17.)

Although subjective complaints of pain alone are not sufficient to establish disability, 42 U.S.C. § 423(d)(5)(A),

> [t]he ALJ must give serious consideration to the plaintiff's subjective complaints
> of pain, even when those assertions are not fully confirmed by objective medical
> evidence. Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986). The ALJ, though,
> is not obliged to accept without question the credibility of such subjective
> evidence. Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). The ALJ has
> discretion "to evaluate the credibility of a claimant and to arrive at an independent
> judgment in light of medical findings and other evidence regarding the true extent
> of the pain alleged by the claimant." Brown v. Schweiker, 562 F.Supp. 284, 287
> (E.D.Pa. 1983) (quoting Bolton v. Secretary of HHS, 504 F.Supp. 288 (E.D.N.Y.
> 1980)).

LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988). In evaluating the credibility of subjective evidence, an ALJ considers the claimant's

> daily activities, [t]he location, duration, frequency, and intensity of [the
> claimant's] pain or other symptoms; [p]recipitating and aggravating factors; [t]he
> type, dosage, effectiveness, and side effects of any medication [the claimant]
> take[s] or [has] taken to alleviate [his or her] pain or other symptoms; [t]reatment,
> other than medication, [the claimant] receive[s] or [has] received for relief of [his
> or her] pain or other symptoms; [a]ny measures [the claimant] use[s] or [has] used
> to relieve [his or her] pain or other symptoms . . . ; and [o]ther factors concerning
> [the claimant's] functional limitations and restrictions due to pain or other
> symptoms.

20 C.F.R. § 404.1529(c)(3) (numbering omitted).

The ALJ addressed Plaintiff's subjective complaints of pain during his RFC analysis, writing that Plaintiff

> testified she was born a male but is currently in the process of going through a
> gender change[]. She presents as a woman. Her physical complaints consist of
> kyphosis in her back which put her on SSI for a few years as a child. She also had
> breast implants and in the surgery one of her lungs was inadvertently punctured.
> [Plaintiff] complains of pain and discomfort but the medical evidence does not
> suggest that there were any unusual complications. She also complains of
> depression although she was meticulously dressed and her hair and nails were
> perfect. [Plaintiff] did not present at all as one who was neglecting her
> appearance. There are very few medical records in the file and [Plaintiff] is not
> currently undergoing any treatment of any sort. She is not taking any medications
> other than the hormone treatments. The psychological consultive examiner noted
> no limitations to working and the internal medicine consultive examiner noted
> only that kyphosis would preclude heavy lifting. Based upon the evidence in the
> file, there is no reason [Plaintiff] cannot work.

(Tr. 17.) As such, the ALJ considered the medications taken to manage Plaintiff's pain and other symptoms, non-medication treatments that Plaintiff has undergone for her symptoms, measures taken by Plaintiff to relieve her symptoms, and other factors regarding her pain and symptom-related functional limitations and restrictions, concluding that objective records of any of these factors were largely, if not entirely, absent. 20 C.F.R. § 404.1529(c)(3). Despite Plaintiff's contention that "the ALJ never mentions [Plaintiff's] borderline intelligence, anxiety, [and] gender confusion" (Pl.'s Br. 29-30), the ALJ stated that he relied on the consultive examinations by Doctors Misra and Baharlias (Tr. 17), which he discussed at length earlier in his decision (Tr. 15-16). That discussion that included the statement that Plaintiff was diagnosed with "gender identity disorder, depressive disorder NOS secondary to a life circumstance problem, and a learning disorder NOS." (Tr. 16.) As such, the ALJ's reasoning regarding Plaintiff's subjective complaints of pain is in compliance with the standard described in LaCorte and Social Security regulations, since the ALJ compared Plaintiff's medical records to her subjective complaints in coming to his conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible" (Tr. 27). See LaCorte, 678 F. Supp. at 83; 20 C.F.R. § 404.1529(c)(3).

Furthermore, the medical evidence within the record does not conflict with the ALJ's conclusion that Plaintiff's subjective complaints of pain are not entirely credible. In the report from Plaintiff's medical consultive examination, Dr. Misra suggests a sedentary job as an alternative to the retail jobs that Plaintiff performed in the past, but makes no comment on whether Plaintiff is incapable of performing the retail jobs. (Tr. 114.) After the mental consultive examination, Dr. Baharlias diagnosed Plaintiff with

      Axis I:        Gender identity disorder.

>                     Depressive disorder not otherwise specified secondary to a life
>                     circumstance problem.
> Axis II:            Learning disorder not otherwise specified.
>                     Rule out borderline intellectual functioning.
> Axis III:           Kyphosis.

(Tr. 124.) None of this medical evidence conflicts with the ALJ's determination. Subjective complaints of pain alone are not sufficient to establish disability, 42 U.S.C. § 423(d)(5)(A), and here, substantial evidence exists to support the ALJ's conclusion that the limited medical evidence on record does not support Plaintiff's subjective complaints of pain. See Burnett, 22 F.3d at 121; Stunkard, 841 F.2d at 59.

Plaintiff's third argument is that the ALJ's decision does not sufficiently compare Plaintiff's medical and mental impairments to the requirements of her past relevant work. Specifically, Plaintiff asserts that the ALJ's description is insufficiently specific, because "[w]e don't know what the requirements of past work were and we don't know how [P]laintiff could satisfy those requirements. There is no task by task evaluation as is absolutely required." (Pl.'s Br. 32-33.) The ALJ found that Plaintiff retained the RFC to perform her past jobs as a sales clerk or a photographer. (Tr. 17.) This Court finds that the ALJ's analysis was insufficient to permit meaningful judicial review and therefore reverses the ALJ's fourth step analysis and remands for further consideration and explanation of the evidence. See Rivera, 164 F. App'x at 262. However, the Court notes that, at this state of the evaluation, "claimant bears the burden of demonstrating an inability to return to her past relevant work." Burnett, 220 F.3d at 118.

The Third Circuit requires that an ALJ undertake a three-step analysis to determine if a claimant can perform his or her past relevant work. Burnett, 220 F.3d at 120. In conducting this analysis,

> (1) the ALJ must make specific findings of fact as to the claimant's residual

15

> functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.

Here, the ALJ does not set forth such an evaluation. In his step four analysis, the ALJ merely recited that Plaintiff "is capable of performing past relevant work as a sales clerk or photographer. This work does not require the performance of work-related activities precluded by [Plaintiff's] [RFC]." (Tr. 17.) He then stated that he compared Plaintiff's RFC "with the physical and mental demands of this work" and found Plaintiff able to perform the work. (Tr. 17.) Along with the previously discussed problems with the ALJ's RFC determination, the ALJ also failed to explicitly "make findings of the physical and mental demands of the claimant's past relevant work" or compare the RFC to those demands. See Burnett, 220 F.3d at 120. Although the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis[,]" Jones v. Barnhart, 364 F.3d at 505, here, the ALJ did not discuss Plaintiff's past work at any point in his decision. (See Tr. 13-18.) This failure requires reversal of the ALJ's determination and remand for further consideration of the evidence at step four and a reasoned explanation of his conclusion.

Finally, although not raised directly as an argument, Plaintiff asserts that the ALJ agreed to obtain Plaintiff's Social Security records from when she was a child, failed to do so, and failed to notify Plaintiff of the inability to obtain the records. (Pl.'s Br. at 13-16.) He infers that this negatively affected Plaintiff's applications for benefits. (Pl.'s Br. at 13-16.) The Court first reiterates that Plaintiff bears the burden of proof at steps one through four of the analysis. Bowen, 482 U.S. at 146 n.5 (1987). As to the development of the underlying record, the ALJ has

16

the burden of developing a claimant's "medical history for at least the 12 months preceding the month in which [a claimant] file[s] [his or her] application[.]" 20 C.F.R. §§ 404.1512(d), 416.912(d).  Here, the records Plaintiff requested that the ALJ obtain were from eight years prior to the submission of the applications presently under review.  Further, no other medical records existed for the ALJ to obtain, as Plaintiff stated that she was not under any medical care nor did she have any medical records.  (Tr. 79-80.)  Therefore, Plaintiff fails to demonstrate that the ALJ's erred in failing to obtain Plaintiff's former Social Security records.

This Court has reviewed the ALJ's decision and the record it is based on.  In summary, the ALJ examined the limited medical records within the record and Plaintiff's subjective complaints of pain and reports of her conditions concluding that Plaintiff retained the residual functional capacity to perform her past relevant work.  Although the ALJ's reasoning and conclusions at steps one through three of the five-step analysis were supported by substantial evidence, the ALJ failed to properly analyze the evidence and explain his RFC determination and his conclusion at step four of the five-step analysis.  As such, the ALJ's decision is reversed and remanded for reconsideration of the RFC determination, step four of the five-step analysis, and, if necessary, step five of that analysis.  The ALJ's underlying conclusions as to steps one through three need not be reconsidered.

### III.  CONCLUSION

For the reasons stated above, this Court reverses the Commissioner's decision and remands for further consideration and a more detailed treatment of the evidence as to the RFC determination, step four, and, if required, step five of the five-step analysis outlined in 20 C.F.R. § 404.1520.


Dated: September 3, 2008


    s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.